ANDREW S. BISOM (SBN 137071)
THE BISOM LAW GROUP
300 Spectrum Center Drive, Ste. 400
Irvine, CA 92618
Telephone: (714) 643-8900
Facsimile: (714) 643-8901
abisom@bisomlaw.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:**<br><br>**GREEN HYGIENICS HOLDINGS, INC.,**<br><br>    **Debtor.** | Case No. 23-01998-MM11<br><br>Chapter 11<br><br>**THIRD AMENDED DISCLOSURE STATEMENT IN SUPPORT OF THIRD AMENDED PLAN OF REORGANIZATION WITH REVISIONS**<br><br>Date:  February 22, 2024<br>Time:  2:00 p.m.<br>Ctrm:  Dept. 1, Room 218<br>Place:  Jacob Weinberger U.S. Courthouse<br>         325 West "F" Street<br>         San Diego, CA 92101-6989 |

     Attached is the Third Amended Chapter 11 Plan (the Plan) proposed by Green Hygienics Holdings, Inc. ("Debtor" or Green Hygienics"). Debtor attests that the information stated in this Disclosure Statement and the Plan is accurate. All Creditors should refer to Articles I-IV of the Plan for the specific treatment of their claims. This Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney,  if you have one.**

DISCLOSURE STATEMENT

**Part I: Background**

**A.    <u>INTRODUCTION</u>**

On July 11, 2023, Green Hygienics filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code. Debtor is in charge of its affairs as the Debtor-in-Possession.

Debtor is a Nevada corporation authorized to conduct business in California. Todd Mueller is the Debtor's Interim CEO.

Debtor's primary asset is a commercial farm located at 1876 Round Potrero, Potrero, CA 91963 ("Potrero Property"). The Potrero Property's value is estimated to be between $17,000,000 - $18,000,000. Liens against it total $7,259,419, leaving equity of approximately $9,740,581 – 10,740,581.

Debtor has suspended its farming operations and is not currently conducting business. Up until that time, Green Hygienics was involved with cultivation of industrial hemp for cannabidiol ("CBD"). Industrial hemp contains less than 0.3% of THC, is not a Schedule I controlled substance and is an ordinary agricultural commodity.

Debtor has decided to sell the Potrero Property and has filed an application to employ Matt Weaver of Lee & Associates Commercial Real Estate Services to market it with a listing price of $17,900,000. Under the terms of the Listing Agreement, and subject to Bankruptcy Court approval, Lee & Associates will be paid a commission of 4% of the gross sales price. The term of the agreement is 6-months and may be extended, if necessary and also subject to Court approval. The full listing agreement is attached to the Debtor's application to employ Lee & Associates. Debtor's principal believes that the listing price is a fair price for the Potrero Property based upon his knowledge of the property and the market. While the price is lower than

the $19,000,000 value provided in the bankruptcy schedules, it is still more than sufficient to pay all creditors in full. The discounted listing price should allow the Potrero Property to be sold within a reasonable time.

Since the market for farmland is limited, as is the number of prospective buyers with the financial ability to make such a purchase Green Hygienics shall have 6 months from the Effective Date to find a qualified buyer and open an escrow and an additional 3 months to complete the sale and pay the allowed claims. Any sale shall require Bankruptcy Court approval. Failure to sell the property within that time period could constitute a material default under the Plan unless the Plan is modified and approved by the Court.

In addition to listing the Property for sale, Mr. Weaver will also seek opportunities to enter into a sale with an option to lease back the Property allowing Green Hygienics to again engage in farming operations. A sale and lease back agreement would be subject to Court approval. Regardless of whether Debtor sells the Property outright or sells it with lease back provision, the sale should generate sufficient net proceeds to pay all creditors, including priority and general unsecured claims in full.

Debtor will also sell its personal property, including automobiles and equipment which has an estimated value of approximately $309,780.

Settlement of Rancho Nuevo Harvesting, Inc. litigation: On October 13, 2020, Rancho Nuevo Harvesting, Inc. (Rancho Nuevo") and Rancho Harvest, Inc. ("Rancho Harvest") (collectively referred to as "Plaintiffs") filed a complaint against multiple defendants in the Superior Court of the State of California, County of Santa Barbara, in an action titled Rancho Nuevo Harvesting, Inc. v. Primordia, LLC, et al. ("State Court Action"). Green Hygienics is included as a defendant.

Prior to the filing of Debtor's bankruptcy case, the parties in the State Court Action entered into a written settlement agreement of which Plaintiffs would receive a collective total of $263,000. Debtor's portion of the settlement payment is $185,000.

On October 13, 2020, Rancho Nuevo Harvesting, Inc. ("Rancho Nuevo") filed a lawsuit in the Superior Court of the State of California, County of Santa Barbara, entitled *Ranch Nuevo Harvesting, Inc. v. Promordia,* LLC ("Superior Court Case") against multiple defendants, alleging unpaid farm labor invoices and unpaid equipment rentals of approximately $830,000. Debtor was included as a defendant in the Second Amended Complaint. Rancho Harvest, Inc. ("Rancho Harvest") was also added as a plaintiff. The Second Amended Complaint alleged that Debtor and defendant Primordia entered into an Asset Purchase Agreement wherein Primodia sold the majority of its assets to Debtor with the intent to hinder, delay and defraud Primordia's creditors. Debtor disputes Plaintiff's allegations.

On or about November 10, 2022, Debtor, along with the remaining defendants reached tentative settlements with the Plaintiffs. Under the terms of the proposed settlement, Debtor agreed to pay Plaintiffs $185,000. Factoring the probability of success in defending the litigation, its complexity and the expense that would be incurred if the case went to trial, the parties believe it was in their best interest in reaching a resolution.

On June 21, 2023, Plaintiffs filed a Motion for Good Faith Settlement Determination in the State Court Action. Debtor filed its Chapter 11 bankruptcy case before the State Court could rule on the Motion. Plaintiffs and the Debtor entered into a stipulation for relief from the automatic stay to allow the State Court to enter an order granting Plaintiff's Motion For Good Faith Settlement Determination under Cal. Civ. Pro. §877 and 877.6. The automatic stay shall remain in effect as to the enforcement of Plaintiffs' claim and the claim will be paid pursuant to the terms of Debtor's Chapter 11 Plan. The settlement and stipulation is not expected to impact

Debtor's Plan.  The Order approving the Stipulation was granted and entered on February 16, 2024 [ECF 101].

### Part 2: Introduction To Chapter 11 Plan

Chapter 11 allows the debtor, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtors are the parties proposing the plan sent to you in the same envelope as this document. **THE DOCUMENT YOU ARE READING IS THE DISCLOSRE STATEMENT FOR THE ENCLOSED PLAN.**

This is a pot plan. In other words, the proponent seeks to accomplish payments under the Plan from the proceeds from the sale of the Potrero Property and personal property, including automobiles and equipment. The Effective Date of the Plan is 30 days following the date of entry of the order confirming Debtor's Plan of Reorganization, unless a stay of the order is in effect, in which case the Effective Date will be the first business day after the date on which the stay of the order approving the sale or disposition has been lifted, provided that the order has not been vacated.

#### A. *Purpose of Disclosure Statement*

This Disclosure Statement summarizes the Plan's contents, reveals critical information relating to the Plan, and explains the process the Court will follow in determining whether the Plan should be confirmed.

**READ THIS DISCLOSURE STATEMENT CAREFULLY. IT PROVIDES INFORMATION REGARDING:**

1.      WHO CAN VOTE OR OBJECT TO THE PLAN;

2.      TREATMENT OF CLAIMS (i.e., how much and on what terms the claim

will be paid);

### 3.      THE EFFECT OF CONFIRMATION OF THE DEBTOR'S PLAN.

You should consider consulting your own lawyer to obtain specific advice regarding the Plan's treatment of your claim. Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires that the disclosure statement contain "adequate information" concerning the plan, in other words, the disclosure statement must provide sufficient information to enable parties to make an informed decision about the plan. Any party can solicit votes for or against the plan once the Court has approved the Disclosure Statement.

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

**TIME AND PLACE OF CONFIRMATION HEARING:**

Debtors' Plan confirmation hearing with take place in Department 1, Room 218 of the United States Bankruptcy Court located in the Jacob Weinberger U.S. Courthouse 325 West "F" Street, San Diego, CA 92101-6989 on May 30, 2024 at 2:00 pm.

**DEADLINE FOR VOTING FOR OR AGAINST THE PLAN**

If you are entitled to vote, you must submit the enclosed ballot to Andrew S. Bisom of the Bisom Law Group at 300 Spectrum Center Drive, Suite 400, Irvine, CA 92618. Your ballot must be received on or before April 26, 2024 to be counted.

/ / /

**DEADLINE FOR OBJECTING TO THE DEBTORS' PLAN**

Objections to confirmation of the Plan must be filed with the Court and served upon Debtor's counsel and the Office of the United States Trustee on or before April 26, 2024 or shall be deemed waived.

**DISCLAIMER**

The financial data relied upon in formulating the Plan is based upon Debtor's best information. The information contained herein has not been audited or reviewed by an independent account and Debtor is unable to warrant or represent that the information (financial or otherwise) is without any inaccuracies. Green Hygienics believes it made reasonable efforts to present fairly and accurately such information and that to the best of its knowledge, everything stated in the Disclosure Statement is accurate.

**LENGTH OF PLAN**

The length of the Plan is 10 months from the effective date.

**Part 3: Proposed Treatment of Claims**

**A.      Unclassified Claims including administrative priority claim, priority tax claims and gap claims**

Holders of administrative priority claims are entitled to priority pursuant to §507(a)(2) of the Bankruptcy Code including (i) professional fees and costs; and (ii) United States trustee's fees. Such claims shall be paid in full on the Effective Date or upon allowance of such claim, whichever is later. Debtor estimates the amount of administrative priority claims will exceed $35,000. These claims consist entirely of the professional fees and costs of Debtor's bankruptcy counsel (est. $35,000) and United States Trustee's Fees in an amount to be determined. The amounts are an approximation, and the final fees and costs could change. Debtor's counsel was paid $15,000 prior to the case being filed, of which $5,937 remained at the time of filing and is

on deposit in Mr. Bisom's Attorney-Client Trust Account.

Holders of priority tax claims are entitled to priority under §507(a)(8). The Internal Revenue Service ("IRS") has filed a proof of claim for $511,721.62 in priority taxes. The Franchise Tax Board has an unsecured priority claim of $4,303.82. Green Hygienics will pay its priority tax claims in full in a single payment within 30 days of the sale of the Potrero Property. In no event will the payments extend beyond 60 months from the filing date of their bankruptcy case. The Claims shall accrue interest at the rate of 7% per annum until paid.

**B.      Priority Claims:** Class 1

These impaired classes include allowed unsecured claims entitled to priority under §507 (except administrative claims under §507(a)(2), involuntary gap period claims under §507(a)(3) and priority tax claims under §507(a)(8), which are unclassified and treated in Article 1A above). Debtor does not have any other Class 1 claims.

**C.      Class 2: Secured claims the Potrero Property.**

**Class 2(a):** The San Diego County Treasurer and Tax Collector ("S.D. County") holds this claim for delinquent property taxes against the Potrero Property in the amount of $191,326.25, plus accrued interest. The allowed amount of the claim will be paid within 30 days of the sale of the Potrero Property. The claim is impaired under the Plan. Debtor estimates that the net proceeds from the sale will be sufficient to pay the Class 2(a) in full. Claimant shall retain its lien on the property until the claim is paid in full. The Claim shall accrue interest at the rate of 7% per annum until paid.

>       Class 2(a): Secured claim of S.D. County
>       Description of collateral: Potrero Property
>       Priority of lien: 1st
>       Total amount of allowed claim: $191,326.25

**Class 2(b):** The Internal Revenue Service ("IRS") holds this claim for delinquent taxes against the Potrero Property in the amount of $330,600. The allowed amount of the claim will be

paid within 30 days of the sale of the Potrero Property. The claim is impaired under the Plan.

Debtor estimates that the net proceeds from the sale will be sufficient to pay the Class 2(b) in

full. Claimant shall retain its lien on the property until the claim is paid in full. The Claim shall

accrue interest at the rate of 7% per annum until paid.

> Class 2(b): Secured claim of the IRS
> Description of collateral: Potrero Property
> Priority of lien: 2nd
> Total amount of allowed claim: $330,600

**Class 2(c):** Kreutzkamp Spouse's Trust ("Kreutzkamp Trust") holds this claim against the

Potrero Property. The allowed amount of the claim will be paid within 30 days of the sale of the

Potrero Property. The claim is impaired under the Plan. Debtor estimates that the net proceeds

from the sale will be sufficient to pay the Class 2(c) in full. Claimant shall retain its lien on the

property until the claim is paid in full. The Claim shall accrue interest at the rate set forth in the

loan documents until paid.

> Class 2(c): Secured claim of the Kreutzkamp Trust
> Description of collateral: Potrero Property
> Priority of lien: 3rd
> Total amount of allowed claim: $2,750,000

**Class 2(d):** Ronald M. Tate, Trustee of the Ronald M. Tate 1988 Separate Property Trust dated

April 13, 1988 ("Tate Trust") holds this claim against the Potrero Property. The claim was

assigned by Home Loan Eagle, Inc. to the Tate Trust on or about September 4, 2019. The

allowed amount of the claim will be paid within 30 days of the sale of the Potrero Property. The

claim is impaired under the Plan. Debtor estimates that the net proceeds from the sale will be

sufficient to pay the Class 2(d) in full. Claimant shall retain its lien on the property until the

claim is paid in full. The Claim shall accrue interest at the rate set forth in the loan documents

until paid.

> Class 2(d): Secured claim of Tate Trust
> Description of collateral: Potrero Property

9

DISCLOSURE STATEMENT

Priority of lien: 4th
Total amount of allowed claim: $1,760,000

**Class 2(e):** Ronald M. Tate, Trustee of the Ronald M. Tate 1988 Separate Property Trust dated April 13, 1988 ("Tate Trust") holds this claim against the Potrero Property. The claim was assigned by Home Loan Eagle, Inc. to the Tate Trust on or about December 17, 2020. The allowed amount of the claim will be paid within 30 days of the sale of the Potrero Property. The claim is impaired under the Plan. Debtor estimates that the net proceeds from the sale will be sufficient to pay the Class 2(e) in full. Claimant shall retain its lien on the property until the claim is paid in full. The Claim shall accrue interest at the rate set forth in the loan documents until paid.

Class 2(e): Secured claim of Tate Trust
Description of collateral: Potrero Property
Priority of lien: 5th
Total amount of allowed claim: $2,668,748

**Class 2(f):** Firebird Manufacturing, LLC ("Firebird") holds this claim against the Potrero Property as the result of a judgment lien. The allowed amount of the claim will be paid within 30 days of the sale of the Potrero Property. The claim is impaired under the Plan. Debtor estimates that the net proceeds from the sale will be sufficient to pay the Class 2(f) in full. Claimant shall retain its lien on the property until the claim is paid in full. The Claim shall accrue interest at the rate set for post-judgment interest in California until paid.

Class 2(f): Secured claim of Firebird
Description of collateral: Potrero Property
Priority of lien: 6th
Total amount of allowed claim: $220,851.83

**Class 2(g):** Ronald M. Tate, Trustee of the Ronald M. Tate 1988 Separate Property Trust dated April 13, 1988 ("Tate Trust") holds this claim against the Potrero Property. The claim was assigned by Eagle Home Loan, Inc. to the Tate Trust on or about January 17, 2023. The allowed amount of the claim will be paid within 30 days of the sale of the Potrero Property. The claim is

10
DISCLOSURE STATEMENT

impaired under the Plan. Debtor estimates that the net proceeds from the sale will be sufficient to pay the Class 2(g) in full. Claimant shall retain its lien on the property until the claim is paid in full. The Claim shall accrue interest at the rate set forth in the loan documents until paid.

> Class 2(g): Secured claim of Tate Trust
> Description of collateral: Potrero Property
> Priority of lien: 7th
> Total amount of allowed claim: $$1,627,000

**D.      Class 3: Secured claims on property other than the Potrero Property.**

The following classes include claims secured by a lien on property other than the Potrero Property in which the Debtor has an interest.

**Class 3(a):** RDO Equipment Co. holds this claim against certain equipment consisting of: 1) 2019 Landoll Disc. Ripper; 2) 2018 John Deere Backhoe; 3) 2019 Solex 5 Row Trium; 4) 2019 Frontier Mower ("Secured Property"). The allowed amount of the claim will be paid within 30 days of the sale of the Secured Property. If the sale proceeds are not sufficient to pay the claim in full, the balance will be paid from the net proceeds from the sale of the Potrero Property. The claim is impaired under the Plan. Debtor estimates that the net proceeds from the sale will be sufficient to pay the Class 3(a) in full. Claimant shall retain its lien on the property until the claim is paid in full. The Claim shall accrue interest at the rate set forth in the loan documents until paid.

> Class 3(a): Secured claim of RDO Equipment Co.
> Description of collateral: (1) 2019 Landoll Disc. Ripper; (2) 2018 John Deere Backhoe;
> (3) 2019 Solex 5 Row Trium; (4) 2019 Frontier Mower
> Priority of lien: 1st
> Total amount of allowed claim: $120,000

**E.      General Unsecured Creditors (Classes 4(a) and 4(b))**

**Class 4(a):** This class consists of general unsecured claims, other than claims of insiders. Class 4(a) claims total $2,422,136.  The claims are impaired under the Plan. The allowed amount of each claim will be paid from the sale of the Potrero Property and personal property, including

vehicles and equipment. Debtor estimates that the net proceeds from the sale will be sufficient to pay all Class 4(a) in full, however this is a pot plan. In other words, the payments under the Plan will come exclusively from the proceeds from the sale of the Potrero Property and personal property, including automobiles and equipment and there is a possibility that the net proceeds may fall short of paying all claims in full. The Claims shall accrue interest at the rate of 5% per annum until paid.

Members of this class include but are not limited to the amount of a secured creditor's claim in excess of the secured claim unless the holder of a secured claim makes a timely and valid §1111(b) election. Should that occur, the claim shall be treated as a secured claim notwithstanding §506(a). General unsecured claims as of the effective date are listed in Exhibit B to the Disclosure Statement.

**Class 4(b):** This class consists of claims by general unsecured creditors of insiders. Class 4(b) claims total $208,750. The claims are impaired under the Plan and will be paid from the sale of the Potrero Property and personal property, including vehicles and equipment. Members of Class 4(b) will receive payment only if Class 4(a) creditors are paid in full. Debtor estimates that the net proceeds from the sale will be sufficient to pay Class 4(a) and Class 4(b) in full, however this is a pot plan. In other words, the payments under the Plan will come exclusively from the proceeds from the sale of the Potrero Property and personal property, including automobiles and equipment and there is a possibility that the net proceeds may fall short of paying all claims in full. The Claims shall accrue interest at the rate of 5% per annum until paid.

**F.    Executory Contracts and Unexpired Leases**

(1) <u>Executory Contracts and Leases Assumed</u>. Upon Plan confirmation, the Debtor will assume the executory contracts and unexpired leases and shall perform all obligations hereunder, both preconfirmation and postconfirmation. Any preconfirmation arrearages shall be paid by the

Effective Date, unless the parties agree otherwise, or the court finds that a proposed payment schedule provides timely cure and adequate assurance of future performance. Postconfirmation obligations will be paid as they come due.

(2) <u>Executory Contracts and Leases Rejected</u>. The Debtor is conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed. Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 4(a), except to the extent this court orders otherwise. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. The Debtor does not have any executory contracts or unexpired leases that are being rejected.

**G.**      **Discharge**

Since Debtor's Plan proposes to pay all allowed claims in full, Debtor will not receive a discharge. The payments promised in the Plan constitute new contractual obligations that replace the preconfirmation debts. Creditors may not sue to collect on these obligations so long as Debtor is not in material default under the Plan. If Debtor materially defaults in performing the Plan, affected creditors may sue Debtor to enforce the terms of the Plan or to dismiss this case or to convert it to a case under chapter 7 of the Bankruptcy Code. See Article I, Paragraph F of the Plan.

**Part 4**
**Voting on Confirmation of Plan**

**A.**      **Who may vote:** Only impaired creditors are entitled to vote (see §1124). A creditor is entitled to vote on confirmation of the Plan unless (i) the creditor's class is unimpaired (presumed to accept the Plan) or is to receive no distribution (presumed to reject the Plan); (ii) an objection has been filed to that creditor's claim; (iii) that creditor's claim is scheduled by the debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of

13
*DISCLOSURE STATEMENT*

claim; or (iv) the claim is unclassified (and thus required by law to be paid in full). A creditor whose claim has either been objected to or has been scheduled by the debtor as contingent, disputed, unliquidated or unknown or who has not filed a proof of claim, and who wishes to vote, must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard before the hearing on confirmation of the Plan. A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a plan in each capacity by delivering one ballot for the secured part of the claim and another ballot for the unsecured portion of the claim.

**B.     How to vote:**  A voting creditor must fill out and return the attached ballot so that the Plan proponent receives it no later than April 26, 2024 at the following addresses:

Andrew S. Bisom, Esq.
THE BISOM LAW GROUP
300 Spectrum Center Drive, Ste. 400
Irvine, CA 92618

**C.     Effect of vote:**  The Plan will be confirmed only if (i) it is accepted by each impaired class, or (ii) it is accepted by at least one impaired class exclusive of insiders (as defined by §101(31)) and the court determines that the Plan is "fair and equitable" (as defined by §1129(b)) to all rejecting classes of creditors, and it meets all of the other criteria required for confirmation. A class of creditors accepts the Plan if it is accepted by a majority in number and at least two-thirds in dollar amount of the creditors in that class timely voting.

**D.     Tax Consequences of Plan**

**THE PAYMENTS MADE PER DEBTOR'S CHAPTER 11 PLAN MAY BE A TAXABLE EVENT. CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.** The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about tax issues

14
DISCLOSURE STATEMENT

this Plan may present to Debtor. Debtor **CANNOT** and **DOES NOT** represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code contains many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

**E.**    **11 U.S.C. 1111(b) Election:** Partially secured creditors may make an election under 11 U.S.C. 1111(b) as to their voting rights. Currently a creditor may have a claim that falls into two categories, secured and unsecured. The claim would currently be considered partially secured. "Partially secured" is defined as secured creditors whose collateral is only partially secured by the value of the collateral. Under 11 U.S.C. 1111(b) a creditor may choose to be treated as fully secured.  Debtors do not make any recommendations or representations as to the voting rights of partially secured creditors and such creditors should seek independent legal advice.

**F.**    **CRAMDOWN:** Cramdown is the approval of a chapter 11 plan by a court despite objections by classes of creditors. While acceptance of a plan by each class of impaired claims or equity interests is required under §1129(a)(8) in order for the plan to be consensually confirmed under §1129(a), §1129(b)(1) provides that a plan that satisfies all of the other applicable provisions of §1129(a) may be confirmed despite the rejection of the plan by a class or classes.

**1. Cramdown of Unsecured Creditors:** If an unsecured class is impaired and votes to reject the plan, the class may still be compelled to accept the plan's treatment. Under §1129(b)(2)(B), a plan can be confirmed notwithstanding the rejection by an impaired class of unsecured claims if the plan: 1) does not discriminate unfairly; and 2) is "fair and equitable" with respect to each nonaccepting, impaired class. A Plan is fair and equitable with respect to a nonaccepting class of unsecured claims if:

a) the plan provides that each holder of a claim in the rejecting class will receive or retain, on account of its claim, property of a value, as of the effective date of the plan, equal to the allowed amount of the claim; or

b) the plan provides that no junior class will receive any distribution or retain any ownership interest under the plan. The "new value" doctrine may allow equity owners to "buy back" their equity interests even though unsecured creditors will receive less than full payment.

## Part 5: Plan Implementation

The Plan will be funded from the sale of the Potrero Property and personal property, including automobiles and equipment. Green Hygienics believes that the sale will provide sufficient net proceeds to pay all unsecured creditors in full after liens against the property have been satisfied.

## Part 6: Liquidation Analysis

Among the Debtor's assets is the Potrero Property and equipment, machinery and inventory. Below is a detailed description of each property, including the property's current value, liens against the property, costs of sale and the estimated net profits if the property was sold.

**1876 Round Potrero, Potrero, CA 91963**
Current Value: $17,000,000 - $18,000,000

<Costs of Sale (6%): $1,020,000 – 1,080,000>
<Property Taxes: $191,326>
<Secured claim of IRS: $330,600>
<Secured claim of Kreutzkamp Trust: $2,750,000>
<Secured claim of Tate Trust.: $1,760,000>
<Secured claim of Tate Trust:$2,668,748>
<Judgment lien of Firebird Manufacturing: $220,852>
<Secured claim of Tate Trust: $1,627,000
<State & Federal Tax Liability: $3,594,000 – 3,876,000>[1]

---

[1] The tax rate for C corporations is 21% for the IRS and 8.84% for CA. and is calculated based upon sales price, minus original purchase price, minus cost of sale. Does not include depreciation.

16
DISCLOSURE STATEMENT

Net Proceeds: $3,038,800 - $3,541,323

**Equipment & Machinery**
HPLC Testing Equipment - $15,000
Lemkin Rubin 9 - $13,000
Centurion 3.1 Trimer - $7,500
Mosa Seeder Trays - $75,000
JD Tractor - $36,000
Landoll Disc Ripper - $25,000
John Deere Backhoe - $45,000
2 Solex Row Triums - $50,000
Frontier Mower - $11,000
JD 75KVA Generator – $23,000
Polaris Razor - $8,000
John Deere Tractor - $5,000
John Deere Manure Spreader - $2,750
John Deere Mulcher - $1,850
Compressor - $1,750
Misc. Equipment, Tools, Generators, Welder, etc. - $10,000
<Cost of Sale (10%) - $33,545>
**TOTAL - $301,905**

**Automobiles**
1997 Ford F350 Flatdeck Truck - $5,000
1994 Dodge 3500 1 Ton Flatdeck Truck - $3,750
1999 Suburban (not operating) - $0
1994 Chevy Blazer K5 (not operating) - $0
<Cost of Sale (10%) - $875>
**TOTAL – $7,875**

**Inventory**
Seed, Biomass Primordia, Biomass, etc. - $0

**Grand Total - $3,348,580 - $3,851,103**

Debtor calculated the liquidation value of each asset as shown above. Debtor arrived at the net liquidation values that are subject to liens by deducting from the value of the assets the amount of the secured liens and any applicable sales costs, fees, and taxes.

| | |
|---|---|
| Net liquidation value of Debtor's assets | $3,348,580 - $3,851,103 |
| Less estimated chapter 7 trustee expenses | -$167,853 - $187,593 |
| Less administrative claims and priority tax claims (see Article 1 of Plan | -$35,000 Est. |

| | |
|---|---|
| Less Other Priority Claims (see Article II of Plan) | -$516,025 |
| Liquidation value available to General unsecured creditors | $2,608,375 - $3,092,158 |
| Divide by estimated amount of allowed General unsecured claims (see Article II, Classes 4(a), & 4(b) of Plan; Exhibit A) | $2,630,886 |
| Equals estimated percentage of their allowed claims that general unsecured creditors would receive in a liquidation of the Debtor | 99% - 100% |
| **Estimated percentage of claims 4(a) & 4(b) unsecured creditors will receive under Debtor's proposed Plan.** | **100%** |

### Part 7: Feasibility

The Plan cannot be confirmed unless the Court finds it feasible. A plan is feasible if confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtors, unless such liquidation or reorganization is proposed in the Plan.

<u>Feasibility.</u> Debtor estimates it will have sufficient cash on hand from the sale of the Potrero Property and personal property to pay all claims and expenses entitled to be paid in cash on such date, as shown below.

| | |
|---|---|
| Cash Green Hygienics will have on hand by Effective Date: | **$3,354,526 - $3,857,049** |
| **Less:** | |
| U.S. Trustee Quarterly Fees: | -$21,327 |
| Administrative and priority claims: | -$551,025 |
| Balance after paying these amounts: | -$2,782,174 - $3,284,697 |

The sources of cash Green Hygienics will have as shown above are:

| | |
|---|---|
| Net Proceeds From Sale of Potrero Property | **$3,348,580 - $3,851,103** |
| Retainer held in Attorney's Trust Account | $5,946 |

**Total: $3,354,526 - $3,857,049**

Feasibility over the life of the Plan. Debtor projects it will receive enough cash from the sale of the Potrero Property and its other assets to make the required Plan payments.

### Part 8: Absolute Priority Rule

The absolute priority rule provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under the plan. *In re U.S. Financial, Inc.* 648 F.2d 515 (9th Cir. 1980). Debtor's Plan provides for payment in full to all classes of claims and does not believe that the absolute priority rule will be an issue in this case.

### Part 8: Miscellaneous Provisions

A. Debtor shall file all post-confirmation quarterly reports with the Court.

B. Debtor shall pay all post-confirmation U.S. Trustee quarterly fees.

C. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

DATED: March 18, 2024                    THE BISOM LAW GROUP

                                         By: /S/ Andrew S. Bisom
                                              ANDREW S. BISOM
                                              Attorney for Debtor

## DECLARATION OF TODD MUELLER

I, Todd Mueller am the CEO of Green Hygienics, LLC, debtor in the instant Chapter 11 bankruptcy case.. All of the following information is from my personal knowledge or from information I keep in the ordinary course of my business affairs. If called upon as a witness, I could and would testify competently thereto.

1.   I have prepared or reviewed all of the information contained in the Disclosure Statement. The financial history, income and creditors' claims are correct to the best of my knowledge. I believe the projections for the net proceeds from the sale of the Potrero Property are based upon reasonable expectations of the sales price and costs of sale.

2.   I have decided to sell the Potrero Property and have instructed Debtor's Attorney to file an application to employ Matt Weaver of Lee & Associates Commercial Real Estate Services to market it with a listing price of $17,900,000. In addition to listing the Property for sale, I will also seek opportunities to enter into a sale with an option to lease back the Property allowing Green Hygienics to again engage in farming operations. The Listing Agreement will be for a term of 6 months and may be extended if necessary. Subject to Bankruptcy Court approval, Lee & Associates will be paid a commission of 4% of the gross sales price. The full listing agreement will be attached to the Debtor's application for the real estate broker's employment.

3.   I believe that the listing price is a fair price for the Potrero Property based upon my knowledge of the property and the market. While the price is lower than the $19,000,000 value shown in the bankruptcy schedules, it is still more than sufficient to pay all creditors in full. The discounted listing price should ensure that the Potrero Property is sold within a reasonable time.

4.   Since the market for farmland is limited, as is the number of prospective buyers with the financial ability to make such a purchase the Plan provides that Green Hygienics shall

have    months to find a qualified buyer and open an escrow and an additional    months to complete the sale and pay the allowed claims. Any sale shall require Bankruptcy Court approval.

5.    Regardless of whether Debtor sells the Property outright or sells it with lease back provision, the sale should generate sufficient net proceeds to pay all creditors, including priority and general unsecured claims in full.

6.   I am confident Green Hygienics will be able to meet its plan obligations based upon the net proceeds from the sale of the Potrero property.

I declare under penalty of perjury under the laws of the United States that the aforementioned information is true and correct. Executed this ____th day of February 2024 in Denver, CO.

_____

TODD MUELLER

DISCLOSURE STATEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

# EXHIBIT A – LIST OF GENERAL UNSECURED CLAIMS

| | | | SCHEDULED CLAIMS | | | ALLOWED CLAIMS | |
|---|---|---|---|---|---|---|---|
| Class | Name | Insider | Impaired | Amount | D/C/U | Amount | Objection |
| 4(a) | Franchise Tax Board | No | Yes | N/A | No | $649.43 | No |
| 4(a) | Internal Revenue Service | No | Yes | N/A | No | $87,581 | No |
| 4(a) | Levan Darjania | No | Yes | $213,000 | Yes | $440,500 | Yes |
| 4(a) | Kyle MacKinnon | No | Yes | $107,679 | No | $248,000 | Yes |
| 4(a) | Morgan Family Farms | No | Yes | N/A | No | $393,049 | No |
| 4(a) | Nutrien Ag. Solutions, Inc. | No | Yes | $37,947 | No | $42,516 | No |
| 4(a) | Protective Insurance Co. | No | Yes | $21 | No | $70,046 | No |
| 4(a) | Rancho Nuevo Harvesting, Inc. & Ranch Harvest, Inc. | No | Yes | N/A | No | $185,000 | No |
| 4(a) | 10/6 Productions | No | Yes | $10,000 | No | N/A | No |
| 4(a) | Bank of the West | No | Yes | $427,000 | No | N/A | No |
| 4(a) | Boustead Securities, LLC | No | Yes | $285,000 | No | N/A | No |
| 4(a) | Clark Hill, PLC | No | Yes | $355 | No | N/A | No |
| 4(a) | Dennis Janda, Inc. | No | Yes | $8,175 | No | N/A | No |
| 4(a) | Discount Edger | No | Yes | $823 | No | N/A | No |
| 4(a) | DLC Process Consulting, LLC | No | Yes | $3,625 | No | N/A | No |
| 4(a) | EEC Test Lab | No | Yes | $425 | No | N/A | No |
| 4(a) | E-Z Shipper Racks | No | Yes | $4,247 | No | N/A | No |
| 4(a) | Greg Sinsom | No | Yes | $55,718 | No | N/A | No |
| 4(a) | GreenGro Technologies | No | Yes | $12,000 | No | N/A | No |
| 4(a) | Greenhouse Systems USA | No | Yes | $29,327 | No | N/A | No |
| 4(a) | Indeglia PC | No | Yes | $1,989 | No | N/A | No |

| 4(a) | Investorbrandn etwork (IBN) | No | Yes | $51,921 | No | N/A | No |
|---|---|---|---|---|---|---|---|
| 4(a) | Keramida, Inc. | No | Yes | $13,848 | Yes | N/A | Yes |
| 4(a) | Law Offices of David J. Hollander | No | Yes | $18,726 | No | N/A | No |
| 4(a) | Liquid Environmental Solutions of CA | No | Yes | $4,594 | No | N/A | No |
| 4(a) | Malbon Creative | No | Yes | $3,000 | No | N/A | No |
| 4(a) | NAPA Auto Parts | No | Yes | $1,104 | No | N/A | No |
| 4(a) | Nevada Agency & Filing | No | Yes | $115 | No | N/A | No |
| 4(a) | Next Wave Insurance | No | Yes | $6,437 | No | N/A | No |
| 4(a) | RDO Equipment Co. | No | Yes | $16,366 | No | N/A | No |
| 4(b) | Ron Loudoun | No | Yes | $587,650 | No | N/A | No |
| 4(b) | Todd Mueller | No | Yes | $150,000 | No | N/A | No |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B**

Andrew S. Bisom; SBN - 137071
THE BISOM LAW GROUP
300 Spectrum Center Drive, Ste. 400
Irvine, CA. 92618
Tel: 714-643-8900
Fax:714-643-8901
abisom@bisomlaw.com

Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** | Case No. 23-01998-MM11 |
| | CHAPTER 11 |
| **GREEN HYGIENICS HOLDINGS, INC.,** | **BALLOT FOR PLAN OF REORGANIZATION** |
| Debtor. | PLAN CONFIRMATION HEARING: |
| | Date:  May 30, 2024 |
| | Time:  2:00 p.m. |
| | Ctrm:  Dept. 1, Room 218 |
| | Place:  Jacob Weinberger U.S. Courthouse |
| | 325 West "F" Street |
| | San Diego, CA 92101-6989 |

*DISCLOSURE STATEMENT*

## ACCEPTANCE OR REJECTION OF THE PLAN

Creditor Name: _____    Claim Amount: $_____

Class: _____

                    Accept Plan: _____    Reject Plan: _____

Dated: _____

Name [Print or type]:          _____

Signature:          _____

Title [If corporation or partnership]:     _____

Address:          _____

          _____

          _____

Telephone No.:          _____

E-mail Address:          _____


Please note the following deadlines:

1.      April 26, 2024: Deadline for creditors to return ballots to the Bisom Law Group at the address listed on the top left-hand corner of the ballot.

2.      April 26, 2024: Deadline for creditors to file objections to Debtor's Plan of Reorganization.

CSD 3010 [12/01/23]

Name, Address, Telephone No. & I.D. No.
ANDREW S. BISOM (SBN 137071)
THE BISOM LAW GROUP
300 Spectrum Center Drive, Ste. 400
Irvine, CA 92618
Telephone: (714) 643-8900
Facsimile: (714) 643-8901
abisom@bisomlaw.com

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

| In Re | |
|---|---|
| GREEN HYGIENICS HOLDINGS, INC. | BANKRUPTCY NO. 23-01998-MM11 |
| Debtor(s) | |
| Plaintiff(s) | ADVERSARY NO. |
| v. | |
| Defendant(s) | |

# PROOF OF SERVICE

I, __Andrew Bisom__ am a resident of the State of California, over the age of 18 years, and not a party to this action.

On __March 18, 2024__, I served the following documents:

Debtor's Third Amended Plan of Reorganization

1.    **To Be Served by the Court via Notice of Electronic Filing ("NEF")**:

Under controlling Local Bankruptcy Rules(s) ("LBR"), the document(s) listed above will be served by the court via NEF and hyperlink to the document. On __March 18, 2024__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address(es) indicated and/or as checked below:
Andrew S. Bisom  abisom@bisomlaw.com, bisom.andrewb105028@notify.bestcase.com
Dennis Lewis  dennis@moncriefhart.com
William A. Markham  wm@markhamlawfirm.com
Elvina Rofael  elvina.rofael@usdoj.gov, Tiffany.L.Carroll@usdoj.gov; USTP.Region15@usdoj.gov
Dennis J. Wickham  wickham@scmv.com, nazari@scmv.com

☐    Chapter 7 Trustee:

☒    For Chapter 7, 11, & 12 cases:          ☐    For Chapter 13 cases:
UNITED STATES TRUSTEE                          MICHAEL KOCH, TRUSTEE
ustp.region15@usdoj.gov                        mkoch@ch13.sdcoxmail.com

CSD 3010 [12/01/23]

2.   **Served by United States Mail**:

On   March 18, 2024                , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing accurate copies in a sealed envelope in the United States Mail via 1) first class, postage prepaid or 2) certified mail with receipt number, addressed as follows:

3.   **Served by Personal Delivery, Facsimile Transmission, Overnight Delivery, or Electronic Mail**:

Under Fed.R.Civ.P.5 and controlling LBR, on                          , I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission, by overnight delivery and/or electronic mail as follows:

I declare under penalty of perjury under the laws of the United States of America that the statements made in this proof of service are true and correct.

Executed on   March 18, 2024
                (Date)

Andrew Bisom
(Typed Name and Signature)

300 Spectrum Center Drive, Ste. 400
(Address)

Irvine, CA 92618
(City, State, ZIP Code)